JOSHUA HOWARD,

                Plaintiff,

v.                                             Case No. 20-cv-1768-pp

CARLA CLOVER, *f/k/a Carla Hartman*,
NIKKI KAMPHUIS, BRAD BADE,
DOE #2, and PAUL WIERSMA,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 20)**

      Plaintiff Joshua Howard, who is confined at the Fox Lake Correctional Institution and who is representing himself, filed this case alleging that the defendants retaliated against him for filing another civil case. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on claims that defendants Carla Clover (formerly known as Carla Hartman) and Nikki Kamphuis retaliated against him for filing Case Number 15-cv-557 by improperly denying his legal loan requests for the case, ordering his cell to be searched three times and having his legal paperwork seized; and that defendants Brad Bade and Does #1 (identified as Paul Wiersma on May 20, 2022) and #2 retaliated against him for filing Case Number 15-cv-557 by searching his cell and seizing his paperwork. Dkt. No. 13 at 6-7. The defendants have filed a motion for partial summary judgment, contending that the plaintiff failed to exhaust his administrative remedies as to his claim that

1

Clover and Kamphuis retaliated against him for filing Case Number 15-cv-557 by denying his legal loan and disbursement requests for that case. Dkt. No. 21 at 1.[1] The court will grant the defendants' motion for partial summary judgment.

## I. Defendants' Motion for Partial Summary Judgment (Dkt. No. 20)

### A. Facts[2]

The plaintiff filed two inmate complaints under the Inmate Complaint Review System (ICRS) in which he mentioned the legal loan denial at issue in this case: WCI-2015-18665 and WCI-2015-18334. Dkt. No. 22 at ¶1.

On July 3, 2015, the "ICE [Inmate Complaint Examiner] Office" received complaint WCI-2015-18665, which states:

> IMPROPER LEGAL LOAN DENIAL
>
> On the above date [6.29.15] I received the denials of my request for postage and envelopes in 15-cv-557. The case is a class action and there are (8) plaintiffs and several defendants. The denial was based on the fact that there are multiple plaintiffs which is not a proper basis to deny a legal loan.

Dkt. No. 22 at ¶2. On July 7, 2015, the ICE returned the plaintiff's complaint materials to him because: "Inmates may not file more than two complaints per calendar week, with few exceptions, and this complaint does not meet either

---

[1] The defendants have filed a motion for reconsideration of the court's order granting the plaintiff's request to substitute the real name of the Doe defendant and the plaintiff has filed a motion to strike. Dkt. Nos. 42, 52. The court will address these motions in a separate order.

[2] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

exception [DOC 310.09(2)]." Dkt. No. 22 at ¶4.[3] About three months later, the plaintiff resubmitted complaint WCI-2015-18665, which the ICE Office received on October 6, 2015. Dkt. No. 22 at ¶6. The ICE rejected WCI-2015-18665 as untimely, writing:

> DOC 310.09(6) states that an inmate shall file a complaint within 14 calendar days after the occurrence giving rise to the complaint, except that the institution complaint examiner may accept a late complaint for good cause. Inmate complains regarding the denial of a legal loan request. That is the occurrence giving rise to this complaint and the date of occurrence is determined to be 6/29/15 as cited by inmate Howard in the complaint. It is well beyond the 14-day time limit to file a complaint with respect to the legal loan denial of 6/29/15. Inmate Howard makes no plea for good cause. He does not present evidence to show how he was denied the use of or inhibited in any way from using the ICRS since the date of the occurrence. In fact, this complaint arrives untimely in part due to the fact when it was originally received on 7/3/15, it had to be returned by rule because inmate Howard had reached his limit of two complaints for the week of June 28 to July 4. Failure to adhere to the reasonable limitation of two complaints per week is not an excuse for an untimely submission. Inmates must prioritize their complaints with this limitation in mind. Good cause is not found.

Dkt. No. 22 at ¶8. The plaintiff requested review of the rejected complaint, arguing that he had filed it on July 3, 2015, the date it was date-stamped and acknowledged. Dkt. No. 22 at ¶9. Warden Pollard affirmed the rejection of WCI-2015-18665, stating the rejection was appropriate. Dkt. No. 22 at ¶10.

The plaintiff also submitted complaint WCI-2015-18334, which the ICE Office initially received on July 3, 2015 and which states,

---

[3] Although the plaintiff does not dispute that the ICE returned his inmate complaint, he contends that the ICE erroneously returned the complaint because the ICE counted two inmate complaints the plaintiff had submitted the previous week, but had not filed until the operative week, toward the two-complaint-per-calendar-week limit. Dkt. No. 28 at ¶4.

3

> I received legal loan denials a week later with the return of legal materials from cell search.
>
> I submitted a request for a legal loan on 6.18.15 and all of my requests were denied on 6.22.15 yet I did not receive my requests back until a week later when I was given back legal materials from a 6.26.15 cell search.

Dkt. No. 22 at ¶11.

The ICE returned complaint WCI-2015-18334, but the plaintiff resubmitted it and the ICE office received it on September 29, 2015. Dkt. No. 22 at ¶13. The ICE rejected complaint WCI-2015-18334 under Wis. Admin. Code §DOC 310.11(5)(c), which permits rejection when "[t]he inmate does not allege sufficient facts upon which redress may be made." Dkt. No. 22 at ¶14. The ICE wrote, "[Howard] does not state what rule he feels is violated or what injury was caused by the delay or in the manner the papers were delivered." Id. The plaintiff's request for review of the rejected complaint states:

> The complaint provides enough facts but the ICE needs to investigate why the legal loan materials were held back, why my cell got searched 3 times during that period and why they were given to me along with the legal materials seized during the searches—why did my request for a legal loan for a lawsuit against the DOC appear to result in several cell searches?

Dkt. No. 22 at ¶15. Warden Pollard found that the ICE had appropriately rejected complaint WCI-2015-18334. Dkt. No. 22 at ¶16.

In addition to the above-described complaints WCI-2015-18665 and WCI-2015-18334, the plaintiff filed four offender complaints related to the cell searches at issue in this case.[4] Complaints WCI-2015-17193 and WCI 2015-

---

[4] The defendants do not contend that the plaintiff failed to exhaust his administrative remedies for his claims based on the cell searches.

18335 relate to the June 22, 2015 cell search. Dkt. No. 29 at ¶20. In WCI-2015-18335, the plaintiff stated:

> MY CELL WAS SEARCHED IN RETALIATION FOR FILING LAWSUITS
>
> On 6.18.15 I submitted a legal loan request to the business office for supplies and postage in Howard v. Walker, 15-cv-557. I filed a motion in the above case to prevent my transfer. I never received any of the requests back and when I talked to Bryan [Bade] after he searched my cell he made the comment, "still feel like staying at WCI?"

Dkt. No. 29 at ¶21. In WCI-2015-17193, the plaintiff stated:

> CELL SEARCH DID NOT COMPLY WITH DOC POLICY
>
> On the above date my cell was searched by C.O. Bryan and the following subsections of DOC 306.16 were not adhered to:
>
> (2)(e) & (3) require that I receive a written record identifying the property seized. This did not happen, the officer took materials without my knowledge and later that evening he attempted to return them without any receipt or record showing what had been seized.
>
> (4) requires that effects should be disturbed as little as possible. My room was trashed and the property of me and my cellmate was all over the floor and we could not even enter the cell.
>
> (5) states that legal material should only be read as is necessary to see its legal and does not contain contraband. Not only was all of my legal material searched and dispersed throughout the cell but the materials seized were clearly legal materials that did not contain contraband.

Dkt. No. 29 at ¶24.

The plaintiff also filed two complaints related to the June 26, 2015 cell searches. Dkt. No. 29 at ¶31. He filed WCI-2015-17192 related to the first search on that date, stating:

5

> MY CELL WAS SEARCHED IN RETALIATION FOR FILING LAWSUITS
>
> On 6.18.15, I submitted legal loan requests to the business office for supplies and postage in <u>Howard v. Walker</u>, 15 cv-557. The above case involves Scott Walker and several WCI staff. When I spoke with the officer who conducted the first search on the above date and asked why I was being searched when it had only been a few days since the last search, he commented, "well you probably shouldn't sue the Governor."

Dkt. No. 29 at ¶32. The plaintiff filed WCI-2015-17898 about the second cell search on June 26, 2015, stating:

> MY CELL WAS SEARCHED TWICE ON THE SAME DAY
>
> My cell was searched on the above date in the afternoon. The officer stopped just before 3:00 and said he had somewhere to be. After spending an hour putting my property/documents back in their places, another C.O. came to the cell and said that the first guy didn't finish so he needed to search my cell. Of course there was no way to determine what had been searched so he had to go through everything all over.
>
> This was completely unnecessary, if the initial search was incomplete then another officer should have took over after being briefed by the leaving officer. Instead my cell was torn apart for the 3rd time in less than a week.

Dkt. No. 29 at ¶34.

    B.    <u>Analysis</u>

        1.    *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Ames v. Home Depot U.S.A., Inc.</u>, 629 F.3d 665, 668 (7th Cir.

2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### 2. *Exhaustion of Administrative Remedies Law*

The Prison Litigation Reform Act (PLRA) provides that an incarcerated person cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at the person's institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025

7

(7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated persons to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). The exhaustion requirement is interpreted strictly and a "prisoner must comply with the specific procedures and deadlines established by the prison's policy." Pyles v. Nwaobasi, 829 F.3d 860, 864 (7th Cir. 2016) (quoting King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015)). But "[r]emedies that are genuinely unavailable or nonexistent need not be exhausted." Id.

In Wisconsin, to exhaust available administrative remedies incarcerated persons must file offender complaints through the Inmate Complaint Review System, outlined in Wis. Admin. Code Ch. DOC 310.[5] See Wis. Admin. Code §§DOC 310.05, 310.08. With certain exceptions, an incarcerated person may use the ICRS to raise significant issues regarding rules, living conditions, staff

---

[5] Any reference to the Wis. Admin. Code Ch. DOC 310 will be to the Register, December 2014 version which was in effect during the relevant time.

actions affecting institution environment and civil rights. Wis. Admin. Code §DOC 310.08(1).

The procedure begins with an incarcerated person filing a complaint with the ICE. Wis. Admin. Code §§DOC 310.09, 310.11. An incarcerated person must file a complaint within fourteen calendar days after the occurrence giving rise to the complaint, but the ICE may accept a late complaint for good cause. Wis. Admin. Code §DOC 310.09(6). The complaint must "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code §DOC 310.09(1)(e). Incarcerated persons may not file more than two complaints per calendar week, although the ICE may waive this limit for good cause, and the ICE shall exclude from this limit complaints that raise health and personal safety issues. Wis. Admin. Code §DOC 310.09(e)(2). The ICE shall either reject the complaint or send a recommendation on the complaint to the "appropriate reviewing authority." Wis. Admin. Code §DOC 310.11(11). The ICE may reject a complaint for various reasons. Wis. Admin. Code §DOC 310.11(5)(a)-(h). The incarcerated person may appeal a rejected complaint to the appropriate reviewing authority within ten days, who shall only review the basis for the rejection of the complaint. See Wis. Admin. Code §DOC 310.11(6).

If the ICE does not reject the offender complaint, the ICE makes a recommendation on the complaint to the reviewing authority. Wis. Admin. Code §DOC 310.11(1)-(4). The reviewing authority then issues a decision on the complaint which, if adverse to the incarcerated person, can be appealed to the corrections complaint examiner (CCE). Wis. Admin. Code §§DOC 310.12,

310.13. Appeals to the CCE must be made within ten days, although later appeals may be accepted for good cause. Wis. Admin. Code §DOC 310.13(1), (2). The CCE then makes a recommendation to the secretary of the Department of Corrections, who takes final action. Wis. Admin. Code §§DOC 310.13, 310.14.

        3.    *Discussion*

The defendants argue that the plaintiff did not exhaust his administrative remedies as to his claim that defendants Clover and Kamphuis retaliated against him for filing Case Number 15-cv-557 by denying his legal loan and disbursement requests for that case. Dkt. No. 21 at 7. They assert that although the plaintiff filed two offender complaints related to loan or disbursement denials (WCI-2015-18665 and WCI-2015-18334), he did not allege retaliation in either one and prison officials properly rejected both complaints. Id.

The plaintiff responds that the court should deny the defendants' motion because they attempt to view two of his six related offender complaints in isolation, contrary to logic. Dkt. No. 27 at 2. According to the plaintiff, the six complaints read together are sufficient to exhaust the retaliation claim and "at the end of the day the denial of the legal loans are peripheral to the conduct at issue, i.e., the repeated searches and the seizure of legal materials, without which there would be no lawsuit." Id. at 3. The plaintiff states that he "specifically exhausted the improper denials and when complaining about the cell searches his narrative starts by explaining that it all started with him

10

seeking a legal loan in '15-cv-557." Id. at 6. He also asserts that when he complained that his request for a legal loan was improperly denied (in WCI-2015-18665), he exhausted his claim that Clover and Kamphuis retaliated against him. Id.

The plaintiff also argues that the ICE improperly rejected WCI-2015-18665 and WCI-2015-18334. Dkt. No. 27 at 6. He says that he filed two unrelated complaints (11647 and 11648) by placing them in the complaint box on Friday, the calendar week of June 21-27, and the ICE processed them the following Monday June 29th and used that as a basis for refusing to accept WCI-2015-18665 and WCI-2015-18334, which had been properly filed on Wednesday July 1st, the following calendar week. Dkt. No. 27 at 8. The plaintiff states that he did all that the ICRS rules required of him to exhaust the complaints. Id. The plaintiff also maintains that, even if the ICE properly rejected his complaints, §DOC 310.09 did not authorize the ICE to return complaints filed in excess of the weekly limit and that the ICE should have accepted the complaints on Sunday, the first day of the next calendar week, instead of returning his complaints. Id. at 8-9. The plaintiff contends that even if the ICE properly rejected and returned WCI-2015-18665, the subsequent rejection on a finding that he did not timely resubmit it was erroneous. Dkt. No. 27 at 9. The plaintiff contends that WCI-2015-18334 alleged sufficient facts for the ICE to move forward with an investigation in that the plaintiff provided relevant dates and presented the odd situation of documents submitted to the

11

business office being returned with materials seized and reviewed by security during a cell search. Id. at 10.

The ICRS requires incarcerated persons to "clearly identify the issue" in their offender complaints. Wis. Admin. Code §DOC 310.09(1)(e). The regulation does not elaborate on what "clearly" identifying the issue entails. The Seventh Circuit has held that "[w]hen the applicable regulations provide little guidance regarding the required contents of a prison administrative complaint, . . . an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" Schillinger v. Kiley, 954 F.3d 990, 995 (7th Cir. 2020) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); see also Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013) (prisoner satisfies exhaustion requirement when he give a prison "notice of, and an opportunity to correct, a problem").

Complaint WCI-2015-18665 states that the plaintiff was improperly denied a legal loan for his request for postage and envelopes for Case Number 15-cv-557. But it does not state that prison staff denied his request *because* he filed Case No. 15-cv-557. And in complaint WCI-2015-18334, the plaintiff states only that he received legal loan denials and that the return of his legal materials from a cell search was delayed. The plaintiff's failure to state in the complaints that he believed that staff refused to give him a legal loan *because he filed Case No. 15-cv-557* deprived prison officials of the opportunity to address that contention; the plaintiff did not "clearly identif[y]" the issue, as required by the Department of Corrections' ICRS provision. See Schillinger, 954

12

F.3d at 995; Price v. Friedrich, 816 F. App'x 8, 10 (7th Cir. 2020) (prisoner's retaliation claim not exhausted because offender complaints did not alert prison officials to prisoner's belief that legal materials were destroyed in retaliation for grievances prisoner filed).

The plaintiff's assertion that the ICE should have considered all six of his inmate complaints together and that, when viewed in their totality, they sufficiently exhaust the conduct at issue is misplaced. The plaintiff has not cited any rule that requires an ICE to consider offender complaints together. Rather, under the ICRS, each offender complaint must contain only one issue and must clearly identify the issue. Wis. Admin. Code §DOC 310.09(e). Even if ICRS rules provided for the consideration of multiple offender complaints, none of the six offender complaints the plaintiff references states that staff denied him legal loans because he filed Case No. 15-cv-557.

The plaintiff has not exhausted his claim that defendants Clover and Kamphuis denied him legal loans in retaliation for filing Case No. 15-cv-557.[6] The court will grant the defendants' motion for partial summary judgment summary judgment.

Previously, the court stayed the deadline for the parties to file motions for summary judgment until forty-five days after the court issued a decision on the defendants' motion for partial summary judgment on exhaustion grounds. Dkt.

---

[6] Because the plaintiff's offender complaints did not raise the issue that staff denied him legal loans in retaliation for filing Case Number 15-cv-557, the court need not address the parties' arguments regarding whether the ICE properly returned or rejected complaints WCI-2015-18665 and WCI-2015-18334.

13

No. 37. While this order resolves the motion for summary judgment on exhaustion grounds, the court will not set a deadline for filing motions for summary judgment on the merits until it resolves the defendants' motion to reconsider the court's order granting the plaintiff's motion to identify a Doe defendant and the plaintiff's motion to strike. As stated previously, the court will address these motions in a separate order. Once the court has resolved these motions the court will give the parties forty-five days to file motions for summary judgment on the merits.

## II. Conclusion

The court **GRANTS** defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 20.

The court **DISMISSES** the plaintiff's claim that Clover and Kamphuis denied his legal loan and disbursement requests for Case Number 15-cv-557 in retaliation for the plaintiff filing that case.

The court **ORDERS** that the deadline for the parties to file motions for summary judgment on the merits is **STAYED**. The court will set a new deadline after it rules on the above-described pending motions.

Dated in Milwaukee, Wisconsin this 16th day of September, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**